IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| UNITED STATES OF AMERICA, | No. 25-CR-1043-CJW-MAR |
|---|---|
| Plaintiff, | |
| vs. | **ORDER** |
| STEPHEN LAMAR SWANN, JR., | |
| Defendant. | |

## I. INTRODUCTION

A Report and Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending that the Court deny defendant's motion to suppress, (Doc. 34), is before the Court. (Doc. 43). Defendant filed an objection. (Doc. 47). For the following reasons, defendant's objection is **overruled**, the R&R is **adopted**, and defendant's motion to suppress is **denied**.

## II. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's R&R, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake [ ] a de novo review of the disputed portions of a magistrate judge's [R&R]"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the

recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's R&R when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of Judge Roberts' R&R de novo.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (cleaned up) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

#### A. Procedural History

On October 22, 2025, a grand jury returned an indictment charging defendant with one count of conspiracy to distribute a controlled substance (cocaine) in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846; one count of distribution of a controlled substance (cocaine) in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); and one count of aiding and abetting the possession with intent to distribute a controlled substance (cocaine) in violation of Title 18, United States Code, Sections 2, 841(a)(1), and 841(b)(1)(C). (Doc. 4).

On December 11, 2025, defendant filed a motion to suppress, requesting suppression of "1. All evidence seized from a search of [a residence on] University Avenue, Dubuque, Iowa, on June 25, 2025[,]" "2. Two blue iPhones seized on June 25, 2025[,]" and "3. Any evidence derived from the seizure of [those] iPhones, the extraction of any data from the phones, and the review of that data." (Doc. 34, at 1; Doc. 34-1, at 14). Defendant filed five exhibits in support of his motion: (A) a case supplemental report from Dubuque Police Investigator Chad Leitzen, (B) a search warrant dated June 25, 2025, (C) a case supplemental report from Dubuque Police Officer Brian Wullweber, (D) a search warrant for two iPhones dated August 1, 2025, and (E) a letter from Joseph Manser along with a property search for defendant and information from Midwest Tint. (Docs. 34-2 through 34-5, 41-1). On December 22, 2025, the government filed a resistance, not resisting suppression of the two blue iPhones and any evidence derived from them. (Doc. 38, at 1).

On January 7, 2026, Judge Roberts held a hearing on defendant's motion. (Doc. 42). At the hearing, the parties did not call any witnesses. (*Id.*). Defendant offered four of the exhibits attached to his motion—Exhibits A, B, C, and E—but did not offer the search warrant for the two iPhones dated August 1, 2025—Exhibit D—given that the government did not resist suppression of the iPhones and any evidence derived from them. (Doc. 41-1, at 4). The government objected to Exhibit E—the letter, property search, and Midwest Tint information—and Judge Roberts admitted the exhibit subject to the objection. (Doc. 41-1, at 6; Doc. 42). Regarding not resisting suppression, the government clarified that it was not agreeing that the seizure and search of the two iPhones was improper, just that law enforcement did not seize any evidence from its search of the phones, so it did not resist defendant's motion as to that evidence. (Doc. 45, at 6–7). More specifically, the government stated: "There were two phones. One

3

phone we couldn't get into. The second phone didn't contain anything that the government could identify as being used to be helpful to its case." (*Id*. at 12).

On January 13, 2026, Judge Roberts issued his R&R, recommending that the Court deny defendant's motion to suppress. (Doc. 43). Defendant filed an objection. (Doc. 47). Neither defendant nor the government have objected to Judge Roberts' findings of fact. The Court has independently reviewed the record and finds no errors in Judge Roberts' detailed and thorough findings of fact; the Court adopts Judge Roberts' factual findings in their entirety. To the extent they are necessary, the Court includes additional facts in the analysis section below. Given the government's agreement, the Court will confine its de novo review to the validity of the first search warrant dated June 25, 2025. The Court will not address the second warrant. (Doc. 34-5).

### B. *June 25, 2025 Search Warrant*

The parties are only disputing the validity of the search warrant for the residence on University Avenue. (Doc. 34-3). Defendant argues that "Inv. Leitzen's affidavit in support of the warrant application did not explain why he believed that the residence might contain evidence of criminal activity, other than a general conclusion that drug dealers keep drugs at their residences." (Doc. 34-1, at 4–5). The government responds that the "affidavit in support of the search warrant for defendant's and Boots' residence contained sufficient facts to establish a fair probability that contraband would be discovered in the residence." (Doc. 38, at 7). In his objection, defendant again argues that the warrant is not supported by probable cause. (Doc. 47, at 2). Defendant claims that the warrant is deficient because "[t]he Affidavit provides no information from any sources about where [defendant] allegedly stored his drugs. Additionally, the controlled buy did not take place at the University Avenue address." (*Id.*, at 3).

The Fourth Amendment ensures that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

4

Case 2:25-cr-01043-CJW-MAR    Document 49    Filed 02/10/26    Page 4 of 9

searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also United States v. Green*, 954 F.3d 1119, 1122 (8th Cir. 2020) ("Under the Fourth Amendment, search warrants must be supported by probable cause."). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks removed) (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (per curium)); *accord United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) ("If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.").

More specifically, to be supported by probable cause a warrant must contain "evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In looking for a nexus, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999). Conclusory statements are insufficient to demonstrate that probable cause exists. *United States v. Moore*, No. 25-cr-1036-CJW, 2025 WL 3014225, at *4 (N.D. Iowa Oct. 28, 2025) (citing *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007)). At the same time, "probable cause is about fair probabilities, not near certainties." *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) (cleaned up). "[A] judge may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant . . . [and] law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant[.]" *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). In addition to allowing for inferences,

5

"[a]s a reviewing court, we pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and limit our inquiry to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010).

Here, the information contained in the search warrant included a request to search the residence at University Avenue as well as a white 2015 Honda Pilot and the defendant's person for controlled substances and drug paraphernalia. (Doc. 34-3 at 3–4). In support of that request, Investigator Leitzen wrote that "the Dubuque Drug Task Force (["]DDTF["]) has received information from several different sources advising that [defendant] and some of his associates are heavily involved in selling drugs, specifically cocaine and marijuana, in Dubuque." (*Id.*, at 9). A confidential source ("CS") told Investigator Leitzen that defendant "is living with Hailie Boots and her very young children at" the University Avenue residence. (*Id.*). In addition, the CS informed Investigator Leitzen that they knew defendant drove a white 2015 Honda Pilot and that defendant "is a major distributor of cocaine, marijuana, Xanax pills, and fentanyl pills in Dubuque." (*Id.*). A confidential informant ("CI") worked with the DDTF to set up a drug deal involving defendant. (*Id.*). DDTF set up surveillance at the drug deal and Investigator Leitzen was able to positively identify defendant as well as observe defendant retrieve something from the white 2015 Honda Pilot that Investigator Leitzen later identified as cocaine. (*Id.*, at 10). Investigator Leitzen saw a co-defendant hand defendant money during that transaction as well. (*Id.*). DDTF officers followed the vehicle defendant was in and observed it return to the University Avenue residence. (*Id.*). DDTF officers later reviewed traffic cameras and observed the vehicle leave the University Avenue residence just prior to the drug deal and arrive at the drug deal location. (*Id.*).

In support of searching the University Avenue residence for drugs and drug paraphernalia in particular, Investigator Leitzen wrote,

> I am also aware that drug dealers often keep bulk quantities of drugs at their residence. The drug dealers often meet drug customers at a location away from their residence in order to sell them a small quantity of drugs for a profit. Drug dealers typically only bring a relatively small quantity of drugs from their residence to the meeting location to help protect them from having the drugs being stolen by drug users or rival drug dealers. It also helps protect the drug dealers from being captured by law enforcement and having all of their drugs seized.

(*Id.*, at 11). Furthermore, Investigator Leitzen wrote, "[b]ased on the facts gathered during this investigator, I believe there will likely be cocaine, marijuana, drug paraphernalia, packaging material, firearms, and possibly other drugs inside the residence [at] University Avenue, Dubuque, Iowa[.]" (*Id.*, at 12).[1]

Based on the totality of information in the four corners of the warrant application, the Court concludes, like Judge Roberts, that there was a fair probability that evidence of a crime would be found at the University Avenue address. As Judge Roberts put it, the warrant "affidavit need not establish Defendant's guilt beyond a reasonable doubt, only probable cause to believe that contraband or evidence of a crime would be found at the University Avenue residence." (Doc. 43, at 16). And, in support of finding probable cause, Judge Roberts highlighted that

> Here, there is plausible information that Defendant and his significant other are involved in drug trafficking. More specifically, Defendant is seen leaving his residence immediately before the controlled buy and he returns to it soon afterward. It is not unreasonable to infer that a known drug supplier, who had a history of taking multiple short trips to a source city in June 2025 (the month pertinent to this investigation), and who left his

---

[1] The Court has summarized the pertinent information from the warrant application here; Judge Roberts included the complete information in his R&R. (Doc. 43, at 2–7).

7

residence and directly proceeded to the location of a controlled drug purchase would have drugs at his residence.

(*Id.*).

In particular, the Court agrees on its de novo review that the warrant affidavit here contained probable cause that there would be drugs and drug paraphernalia at the University Avenue address given the warrant application's inclusion of evidence that defendant was heavily involved in drug trafficking and a major distributor of drugs, completed a drug deal with a CI, and that defendant came directly from and returned directly to the University Avenue address following that drug deal; the University Address was defendant's known residence at the time. The warrant application also included Investigator Leitzen's statement that drug dealers only bring small quantities of drugs with them to drug deals, keeping the remainder of their supply at their residence. Applying that logic, and making a reasonable inference, the warrant application established that defendant would likely have additional drugs and drug paraphernalia at his residence, which is what the warrant requested permission to search for and seize. Defendant's arguments to the contrary largely quibble with there being no direct evidence of drugs at the University Avenue residence, arguing that the warrant needed information from someone who knew that defendant stored his drugs at the University Avenue residence. But, as explained above, the issuing judge can apply reasonable inferences to reach a reasonable conclusion. The lack of direct evidence here is not fatal, and the Court concludes on its de novo review that the warrant for the University Avenue residence was supported by probable cause. The Court overrules defendant's objection on this issue and denies defendant's motion to suppress.

### 2. Leon *Good Faith Exception*

Defendant also objects to Judge Roberts' recommendation on the *Leon* good faith exception. (Doc. 47, at 3–5). Because the Court has already found probable cause

8

Case 2:25-cr-01043-CJW-MAR     Document 49     Filed 02/10/26     Page 8 of 9

supported the warrant, the Court need not address the *Leon* good faith exception. *See United States v. Leon*, 468 U.S. 897 (1984). This issue is moot. *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 (8th Cir. 2025) (explaining that an issue is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party"). Defendant's objection on this second issue is overruled, and the Court denies defendant's motion to suppress.

## IV. CONCLUSION

For these reasons, defendant's objection (Doc. 47) is **overruled**. The Court **adopts** the R&R. (Doc. 43). Defendant's Motion to Suppress (Doc. 34) is **denied**.

**IT IS SO ORDERED** this 10th day of February, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa